UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | Criminal No. 05-358 (RCL) |
| | : | |
| v. | : | |
| | : | |
| **MORTON WELLS,** | : | |
|     defendant. | : | |

## GOVERNMENT'S OPPOSITION TO
## DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

      The United States, by and through its attorney, the United States Attorney for the District of Columbia, submits this opposition to defendant's Motion to Suppress Evidence. The government relies upon the points and authorities set out in this memorandum and at any hearing on this matter.

### FACTS:

      Defendant Morton Wells has been indicted in a four-count indictment with the charges of Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding one Year; Unlawful Possession with Intent to Distribute Cocaine Base; Unlawful Possession with Intent to Distribute Cannabis; and Using, Carrying, and Possessing a Firearm During a Drug Trafficking Offense.

      The charges arise from events which occurred on December 17, 2004. On that day, officers from the Metropolitan Police Department's Fourth District executed a search warrant at xxxx xxxxxx xxxxx xx, Washington, DC. The warrant used to gain entry at xxxx xxxxxx xxxxx xx had been sworn out by Officer Scott Pinto. Officer Pinto's Affidavit in Support of a Search Warrant, included as Attachment A, detailed the officer's basis for believing that illegal drugs

and other related paraphernalia would be recovered from inside of xxxx xxxxxx xxxxx xx  Only a few days prior to getting the search warrant, Officer Pinto and his partner had arrested the defendant's nephew, Jared Deonte Wells, for Possession with Intent to Distribute Marijuana. The officers had observed Jared Deonte Wells engaging in an apparent drug transaction, and recovered several ziplock bags of marijuana in a location where they had seen Jared Wells throw a bag.  They also recovered a ziplock of marijuana from under Jared Wells' foot.  The same officer had arrested Jared Deonte Wells for Possession of Marijuana only eight days prior to his arrest for Possession with Intent to Distribute Marijuana.  Jared Deonte Wells lives at xxxx xxxxxx xxxxx xx

      In addition to Jared Deonte Wells, the officers were also familiar with another individual who lived at xxxx xxxxxx xxxxx xx – the defendant's brother (and Jared's uncle), Javon Derrick Wells.  A few months earlier, Officer Pinto's partner, Officer Clifford, had arrested Javon Wells for Possession with Intent to Distribute Cocaine on August 6, 2004.  Javon Wells lives at xxxx xxxxxx xxxxx xx

      Besides having arrested two individuals who lived inside of xxxx xxxxxx xxxxx xx for drug trafficking offenses, the officers had also received numerous complaints from citizens for ongoing narcotics activity at that address.  The officers had even received a letter from a concerned citizen which informed the officers that the citizen had seen males hiding drugs in the rear of 1016 and xxxx xxxxxx xxxxx xx

      Based upon those details contained in Officer Pinto's Affidavit in Support of a Search Warrant, D.C. Superior Court Judge Bruce Mencher determined that the officer's affidavit

provided probable cause to search the premises at xxxx xxxxxx xxxxx xx and signed off on the warrant.

At approximately 7:18 a.m. on December 17, 2004, officers went to xxxx xxxxxx xxxxx xx to execute the warrant. Because the officers believed that this was a "high risk" warrant, and that guns were probably located within the house, members of the Metropolitan Police Department's Emergency Response Team ("ERT") were assigned to gain entry to the house. Several ERT members approached the front door of the house. As they approached, they could hear voices coming from inside the house. There was an iron gate in front of the wooden front door to the house. The iron gate was unlocked. Members of the ERT opened the iron gate, and noticed that the wooden front door to the house was already ajar. The officers pushed it open further and announced that they were the police and that they had a search warrant. When the officers pushed the wooden door open further and announced police, they noticed the defendant's sister, Dominique Wells, standing at the doorway. The officers then walked into the house.

The house at xxxx xxxxxx xxxxx xx is a three-story row house which is owned by the defendant's grandmother. From the defendant's bedroom (the third bedroom at the top of the steps), officers recovered mail matter, court documents, and a social security card in the name of "Morton Wells". Under the mattress on defendant's bed, officers found a loaded .9mm handgun. Officers also recovered a black leather jacket that was hanging on the wall in the bedroom. Inside the pocket of that jacket, officers found thirteen blue ziplock bags of crack cocaine. From inside a boot that was in the closet in the room, officers recovered six ziplocks of marijuana. Officers also recovered $200 from inside a boot. On the television stand in the room, officers found a digital scale. Empty ziplock bags were recovered from a night stand in the room.

From the defendant's grandmother's bedroom, officers recovered an antique double barreled shotgun.[1]  From the middle bedroom on the top floor, identified as the bedroom of Mario Wells, officers recovered four rounds of .45 caliber ammunition, empty ziplock bags, and a pay stub in the name of "Mario Wells".[2]  In a living room closet, officers recovered thirteen ziplocks of marijuana and one blue ziplock of crack cocaine.  In the basement, officers found a bowl which contained several rounds of .45 caliber ammunition.  Inside the same bowl, officers recovered a D.C. driver's license in the name of "Morton Wells".  From a dining room credenza, officers recovered papers and identification in the name of "Jared Wells".

Defendant has now filed a motion asking the Court to suppress all evidence seized by the police from inside of xxxx xxxxxx xxxxx xx  Defendant argues that the warrant signed by Judge Mencher does not establish probable cause, and that the police violated the knock and announce requirements when entering the premises.  Defendant's motion is without merit, and should be denied.

### ARGUMENT:

**A.     Defendant Has Not Demonstrated That He Has Standing to Challenge the Seizure of Items from the House**

Fourth Amendment rights are personal rights, which may not be vicariously asserted. Rakas v. Illinois, 439 U.S. 128, 133 (U.S. 1978).  When a criminal defendant moves to suppress evidence, the question becomes whether the search or seizure violated the Fourth Amendment

---

[1] The antique shotgun was seized by the police for destruction.  It was not taken into evidence, and no one has been charged with possession of the antique shotgun.

[2] Mario Wells has been identified as the defendant's brother.

rights of the particular defendant who seeks to exclude the evidence obtained during the search and seizure.  Id. at 140.  This inquiry requires a determination of whether the disputed search and seizure has infringed an interest of the defendant.  Specifically, the defendant must establish that he had a "legitimate expectation of privacy in the invaded place."  United States v. Hicks, 978 F.2d 722, 723 (D.C. Cir. 1992) (quoting Rakas, supra, 439 U.S. at 143, internal quotations omitted).  Further, "[t]he proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure."  United States v. Caicedo-Llanos, 960 F.2d 158, 163 (D.C. Cir. (1992) (quoting Rakas, supra 439 U.S. at 131, internal quotations omitted).

In this case, defendant has not met his burden of establishing that his own Fourth Amendment rights were violated by the search of the Quebec Place house, and the seizure of the items therein.  First, in his motion, defendant states that he is seeking to suppress all of the evidence recovered from the house.  Defense Motion, page 4.  Defendant cannot demonstrate that he has a legitimate expectation of privacy throughout the Quebec Place house, and therefore cannot show that he had a legitimate expectation of privacy in all of the areas searched.

The Quebec Place home is owned by the defendant's grandmother.  Several other people live in the house, besides the defendant.  Therefore, the defendant cannot demonstrate that he had a legitimate expectation of privacy in all rooms in the house.  Several rooms in the house were identified as rooms belonging to people other than the defendant, or were rooms used or shared by several people.  The defendant cannot demonstrate that he had a reasonable expectation of privacy in those rooms. Therefore, he lacks standing to move to suppress the items of evidence seized from those rooms.

**B.     The Items Taken from the House Were Seized Pursuant to a Lawful Search Warrant**

Even if the Court finds that the defendant has demonstrated standing to challenge the search and seizure of items from the Quebec Place house, the items were seized pursuant to a lawful search warrant. The Supreme Court has often expressed a preference that searches be conducted pursuant to warrants, which are issued by "neutral and detached" magistrates who make an independent determination of the probable cause set forth in the affidavit accompanying the search warrant. Johnson v. United States, 333 U.S. 10, 14 (1946). In evaluating whether an affidavit establishes probable cause to support a search, the magistrate (or judge) must employ a "totality of the circumstances" test. Illinois v. Gates, 462 U.S. 213, 231 (1983). Under the totality of the circumstances test,

> The task of the issuing magistrate is simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for ...concluding" that probable cause existed.

Id. at 238-239 (citation omitted).

The Supreme Court, noting that reasonable minds may differ on the question of whether probable cause exists, has concluded that the "preference for warrants is most appropriately effected by according 'great deference' to a magistrate's determination." United States v. Leon, 468 U.S. 897, 914 (1984) (citations omitted).

However, even if a reviewing court determines that the warrant affidavit was lacking in

probable cause, suppression of evidence obtained in execution of the warrant is not necessarily the appropriate remedy. In Leon, the Supreme Court recognized a "good faith" exception for searches conducted pursuant to warrants. 468 U.S. at 914. In that case, the Supreme Court concluded that "the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion." Id. at 922. An officer's reliance on the magistrate's probable cause determination must be objectively reasonable. Id. However, "searches pursuant to a warrant will rarely require any deep inquiry into reasonableness, for a warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search." Id. (internal citations and quotations omitted).

     The "good faith" exception is not applicable in all cases, and suppression of evidence remains an appropriate remedy in certain circumstances. Suppression remains an appropriate remedy if the magistrate was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless regard for the truth. Id.; Franks v. Delaware, 438 U.S. 154 (1978). The "good faith" exception will also not apply in cases where the magistrate has wholly abandoned his judicial role. Leon, 468 U.S. at 923. Suppression will also be appropriate in cases where an officer relies on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." Id. (internal citations and quotations omitted). Finally, suppression may also be appropriate in cases where a warrant is so facially deficient that the executing officers cannot reasonable presume it to be valid. Id. (citations omitted).

In this case, Officer Pinto presented an Affidavit in Support of a Search Warrant to a D.C. Superior Court Judge. The Judge found that Officer Pinto's affidavit demonstrated probable cause to search the premises at xxxx xxxxxx xxxxx xx, Washington, DC, and signed off on the warrant. The warrant is valid on its face, and defendant's challenge to it must fail. Officer Pinto's affidavit in support of the search warrant detailed his experience, his prior contact with persons living at xxxx xxxxxx xxxxx xx, and his knowledge of illegal drug activity connected with xxxx xxxxxx xxxxx xx  The warrant demonstrated a fair probability that contraband or evidence of a crime would be found at the Quebec Place house. Officer Pinto and his partner have personally arrested two individuals who lived at xxxx xxxxxx xxxxx xx for drug trafficking offenses. Further, a citizen informed Officer Pinto, via a written letter, that males were hiding drugs in the rear of xxxx and xxxx xxxxxxxxx., N.W. The information provided in the letter was corroborated by several complaints from other citizens about drug activity at xxxx xxxxxx xxxxx  This information was also corroborated by Officers Pinto and Clifford, who personally observed Jared Wells and two other individuals place ziplocks of marijuana into the rafters in the rear of xxxx xxxxxx xxxxx

With these facts, Officer Pinto's warrant clearly demonstrated probable cause. Further, there is no evidence, nor does defendant allege, that the warrant was based upon false or misleading information. Therefore, the warrant is valid, and defendant's challenge must fail.

      **C.**      **There Was No Violation of the Knock and Announce Requirement**

The knock and announce requirement is inherent in the Fourth Amendment prohibition against unreasonable searches and seizures. <u>Poole v. United States</u>, 630 A.2d 1109, 1116 (1993),

cert. denied, 513 855 (1994).  The knock and announce requirement is also codified at 18 U.S.C. § 3109.  That statute provides,

> The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant.

An officer's entry through a *closed* door is a "breaking" within the meaning of the statute.  United States v. Kemp, 12 F.3d 1140, 1141 (D.C. Cir. 1994) (emphasis added).  However, if the door was already open when the officer approached the dwelling, or if an officer's knock further opened a door that was already standing ajar, there is no "breaking" within the meaning of the statute.  Id.  See also United States v. Thorne, 997 F.2d 1504, 1513 (D.C. Cir. 1993).

In Kemp, officers executing a search warrant opened a screen door and knocked on the inner door to the house.  supra, 12 F.3d at 1141.  When the officers knocked on the inner door, the door swung open.  Id.  Once the door swung open, the officers were able to see the defendant and two others sitting on a sofa in the living room.  Id.  The officers announced their presence and purpose while standing at the door, and then entered the apartment.  Id.  In Kemp, the Court of Appeals rejected the defendant's claim that the officers' entry violated 18 U.S.C. § 3109.  Id.  The Court found that there was no "breaking" as contemplated by the statue because the officers only used ordinary force to knock on the door, and the occupants were made aware of the officers' presence before they entered the premises.  Id.

In Thorne, the entering officer did not announce his presence or purpose.  supra, 997 F.2d at 1513.  However, the door to the house was ajar when the officer arrived, and he could see into the house.  Id.  When the officer knocked on the door, the force of the knock further opened the

door, and the officer entered the house. Id. In that case, the Court of Appeals held that because the officer did not break open the door, he did not violate the statute. Id.

The facts of the case at hand are very similar to both Kemp and Thorne. Like the officers in Kemp, the officers in this case announced their presence at an open door and then entered the house. In Kemp, it was the force of the officers' knock which actually opened the door. 12 F.3d at 1141. Still, the Court in that case found that there was no "breaking" within the meaning of the statute. Id. In the case at hand, the door was already ajar when the officers got there. Therefore, there is even less of a "breaking" in this case than there was in Kemp. In Thorne, the door was actually ajar when the officers arrived – just as it was in the case at hand. 997 F.2d at 1513. In Thorne, the officers entered through an already-open door, but did not announce their presence. Id. Even though the officers did not announce their presence, the Court of Appeals still found no violation of 18 U.S.C. § 3109. Id. In the case at hand, the officers did announce their presence and purpose before entering through the already-open door. Therefore, again, there is even less of a "breaking" in this case than there was in Thorne.

As the above case law dictates, the officers actions in this case cannot be considered a "breaking" as contemplated by the statute. Because the officers did not break open the door to the Quebec Place house, there was no violation of 18 U.S.C. § 3109. Because there was no violation of 18 U.S.C. § 3109, there is no basis upon which to suppress the evidence obtained during the search of the house.

WHEREFORE, the government respectfully requests that the Court DENY defendant's Motion to Suppress Evidence.

        Respectfully Submitted,

        KENNETH L. WAINSTEIN
        UNITED STATES ATTORNEY

        _____
        TONYA SULIA
        ASSISTANT UNITED STATES ATTORNEY
        555 4th Street, N.W., Room 4243
        Washington, DC 20530
        (202) 305-2195   FAX:  (202) 353-9414